ANDREA T. MARTINEZ, United States Attorney (#9313)
SETH NEILSEN, Special Assistant United States Attorney (#13823)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 325-1405
Email: Seth.Nielsen@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JORGE MENA-PANDURO, and<br>MACARIO SOTO-MONTOYA,<br><br>Defendants. | Case No. 2:22-mj-00306 DBP<br><br>**COMPLAINT**<br><br>Judge Dustin B. Pead |

Before the Honorable Dustin B. Pead, United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

**COUNT I**
**21 U.S.C. §§ 841(a)(1) and 846**
[Conspiracy to Distribute Heroin]

Beginning at a date unknown, but not later than January 2021, and continuing through at least April 25, 2022, within the District of Utah and elsewhere,

JORGE MENA-PANDURO, and
MACARIO SOTO-MONTOYA,

defendants herein, did knowingly and intentionally conspire with others known and unknown to distribute one kilogram or more of a mixture or substance containing a detectable amount of Heroin, a Schedule I controlled substance within the meaning of 21 U.S.C. § 812, all in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

**COUNT II**
**21 U.S.C. §§ 841(a)(1) and 846**
[Conspiracy to Distribute Methamphetamine]

Beginning at a date unknown, but not later than January 2021, and continuing through at least April 25, 2022, within the District of Utah and elsewhere,

JORGE MENA-PANDURO, and
MACARIO SOTO-MONTOYA,

defendants herein, did knowingly and intentionally conspire with others known and unknown to distribute 500 grams or more or more of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II controlled substance within the meaning of 21 U.S.C. § 812, all in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

**COUNT III**
**21 U.S.C. §§ 841(a)(1) and 846**
[Conspiracy to Distribute Fentanyl]

Beginning at a date unknown, but not later than January 2021, and continuing through at least April 25, 2022, within the District of Utah and elsewhere,

JORGE MENA-PANDURO, and
MACARIO SOTO-MONTOYA,

defendants herein, did knowingly and intentionally conspire with others known and unknown to distribute 400 grams or more or more of a mixture or substance containing a detectable amount of Fentanyl, a Schedule I controlled substance within the meaning of 21 U.S.C. § 812, all in violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

**COUNT IV**
21 U.S.C. § 841(a)(1)
[Possession of Heroin with Intent to Distribute]

On April 25, 2022, in the District of Utah,

JORGE MENA-PANDURO,

the defendant herein, did knowingly and intentionally possess with intent to distribute a controlled substance, to wit: one hundred (100) grams or more of a mixture and substance containing a detectable amount of Heroin, a schedule I controlled substance within the meaning

of 21 U.S.C. § 812; all in violation of 21 U.S.C. § 841(a)(1), and punishable pursuant to 21 U.S.C. § 841(b)(1)(B).

**COUNT V**

21 U.S.C. § 841(a)(1)
[Possession of Heroin with Intent to Distribute]

On April 25, 2022, in the District of Utah,

MACARIO SOTO-MONTOYA,

the defendant herein, did knowingly and intentionally possess with intent to distribute a controlled substance, to wit: one kilogram or more of a mixture and substance containing a detectable amount of Heroin, a schedule I controlled substance within the meaning of 21 U.S.C. § 812; all in violation of 21 U.S.C. § 841(a)(1), and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

**COUNT VI**

18 U.S.C. §924(c)
[Possession of a Firearm in Furtherance of a Drug Trafficking Crime]

On or about April 25, 2022, in the District of Utah,

MACARIO SOTO-MONTOYA,

defendant herein, did knowingly possess a firearm, namely, Smith and Wesson 9mm M&P Shield handgun, in furtherance of a drug trafficking crime, to wit: Possession of Heroin with Intent to Distribute, a violation of 21 U.S.C. § 841(a)(1), as alleged in Count V of this Complaint, which count is incorporated by reference herein; all in violation of 18 U.S.C. § 924(c)(1)(A).

**AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT**

I, Johnny Ngo, being duly sworn, state as follows:

**BACKGROUND AND QUALIFICATIONS**

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration Metro Narcotics Task Force (DEA MNTF), United States Department of Justice. I have been employed by the Unified Police Department for the past 11 years. The DEA Salt Lake City District Office is a multi-agency task force responsible for investigating major drug trafficking

organizations. I previously worked as a patrol officer with the Unified Police Department for approximately five years before transferring to the Narcotics Unit. I have training in narcotics identification and in the investigation of narcotic-related offenses. I was previously assigned to the Wasatch Range Task Force, which is an FBI Narcotics Task Force, and to the High-Risk Victims Unit, which investigates vice-related crimes including, but not limited to, prostitution, narcotics, and human trafficking. I have conducted numerous undercover operations during these investigations, resulting in the arrest of several involved individuals. I have participated in several investigations involving drug trafficking activities, money laundering, and conspiracy to do the same, and have written and executed numerous search warrants. These investigations have resulted in the arrests and convictions of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of controlled substances and proceeds of the sale of those controlled substances.

2. This training and experience form the basis for opinions expressed below. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, database and public records checks, searches, and other investigation.

**PROBABLE CAUSE**

3. Beginning in January of 2021, agents with the DEA Metro Narcotics Task Force (MNTF) began investigating a heroin / methamphetamine distribution organization operating in the Salt Lake Area. Through this investigation, agents were able to identify an individual, first known only as "MENA" and later identified as JORGE MENA-PANDURO, who was residing in Mexico and facilitating shipments of heroin, methamphetamine, and Fentanyl-laced fake oxycodone pills to Utah.

4. Through this investigation, from January 2021 to April 2022, agents have conducted numerous buy/walk operations to purchase narcotics and identify individuals distributing narcotics for MENA in the Salt Lake area. Agents have obtained numerous state and federal search warrants, made several arrests, and seized large quantities of methamphetamine, heroin, Fentanyl-laced fake oxycodone pills, guns, and U.S. currency related to this case.

5. Agents had a confidential source (CS1[1]) who provided information about MENA and who would contact MENA to purchase large amounts of drugs from MENA. While MENA was in Mexico, MENA would send other individuals to deliver the narcotics to CS1. Typically, CS1 would contact MENA on a Mexico-based phone number. MENA would negotiate the amounts of the drugs and prices. After negotiations concluded, other individuals would contact CS1 and indicate that they had been directed by MENA to deliver the narcotics to CS1. The other individuals would typically determine the deal locations. Over the course of the investigation, CS1 introduced other confidential sources (CS2 and CS3) to MENA, who both also purchased narcotics from MENA and his couriers. Ultimately, MENA came to Utah to facilitate his narcotics distribution and was arrested. The investigation into MENA yielded the following seizures:

**May 19, 2021, Controlled Purchase**

6. On May 19, 2021, agents utilized CS1 who was introduced to MENA and given a phone number for MENA: XX-XX-XXX-9266. Agents had CS1 contact MENA at that number to purchase four ounces of methamphetamine. MENA provided CS1 with a phone number for a courier located in Salt Lake who was later identified as Omar FRAGOSO Cruz. During this operation, CS1 received a text message from FRAGOSO who provided a deal location for the purchase. Before the meeting, agents met with CS1 and searched CS1's person and vehicle for narcotics and weapons; they found none. CS1 then met with FRAGOSO and completed the deal set up by MENA for 143.9 grams of methamphetamine. CS1 left the deal location and then met with agents. CS1 turned over the 143.9 grams of methamphetamine to the agents. The methamphetamine tested positive for methamphetamine.

**June 4, 2021, Controlled Purchase**

7. On June 4, 2021, agents instructed the CS1 to contact FRAGOSO, who was introduced by MENA, to purchase eight ounces of methamphetamine. As before, agents met with CS1 before the meeting and searched CS1's person and vehicle for narcotics and weapons, finding none. FRAGOSO communicated the deal location to CS1. CS1 met with and purchased 254.7 grams of methamphetamine from FRAGOSO. Shortly after the deal, CS1 met with agents and turned over the 254.7 grams of methamphetamine to them. The methamphetamine tested

[1] Agents have been paying CS1 to provide assistance to our investigation. CS1 has a criminal history but no convictions for crimes of dishonesty. As shown herein, CS1's information has proven to be reliable.

positive for methamphetamine. Agents conducting surveillance were able to identify a residence for FRAGOSO.

**<u>June 14, 2021, Search Warrant</u>**

8. On June 14, 2021, agents obtained a search warrant for FRAGOSO's residence. During the search, agents seized 1363.3 grams of methamphetamine, 572.2 grams of heroin, 33.8 grams of marijuana, and $8,560 in U.S. currency. The methamphetamine, heroin, and marijuana were later tested and, respectively, tested positive for methamphetamine, heroin, and marijuana. During a post-*Miranda* interview of FRAGOSO, he admitted that he was storing and selling drugs for a third party in Sinaloa, Mexico. FRAGOSO identified that third party as "MENA." FRAGOSO was federally indicted in case 2:21-cr-00280-DAK.

**<u>June 23, 2021, Controlled Purchase</u>**

9. On June 23, 2021, agents instructed CS1 to contact MENA to order four ounces of methamphetamine and 100 blue M30 pills. This time, MENA instructed CS1 to go to a location and provided CS1 with a phone number for his courier (who was later identified as Suspect 1 (S1)). Before heading to the designated location, CS1 met with agents and CS1's person was searched for narcotics and weapons; none were found. CS1 then went to the designated location and contacted S1, who arrived and met with CS1. CS1 purchased 261.5 grams of methamphetamine and 100 blue M30 pills. CS1 then left the area and, shortly thereafter, met with agents. CS1 turned over the 261.5 grams of methamphetamine and 100 blue M30 pills. The methamphetamine tested positive for methamphetamine. The 100 blue M30 pills have been submitted for testing and results are still pending.

**<u>August 4, 2021, Controlled Purchase</u>**

10. On August 4, 2021, agents instructed CS1 to contact MENA to purchase two ounces of heroin for $1,500. CS1 contacted MENA and MENA told CS1 that MENA would have his courier (later identified as Suspect 2 (S2)) contact CS1. A short time later, CS1 was contacted by S2, and they established a deal location. CS1 met with agents before going to the deal location and CS1's person was search for narcotics and weapons; none were found. CS1 then went to the deal location. S2 arrived shortly thereafter and sold 82.9 grams of heroin to CS1. After S2 left, CS1 met with agents and turned over the 82.9 grams of heroin. The heroin tested positive for heroin.

**August 20, 2021, Controlled Purchase**

11. On August 20, 2021, agents instructed CS1 to contact MENA to purchase two ounces of heroin from MENA for $1,250. CS1 contacted MENA and they established a deal location. MENA let CS1 know that his courier would be contacting CS1. A short time later, CS1 was contacted by the courier (later identified as Eleazar LOPEZ-Barreras). Before going to the deal location, CS1 met with agents and CS1's person was searched for narcotics and weapons; none were found. CS1 traveled to the deal location and met with LOPEZ, who sold CS1 82.6 grams of heroin. After the deal, CS1 met with agents and turned over the 82.6 grams of heroin. The heroin tested positive for heroin.

**November 9, 2021, Controlled Purchase**

12. On November 9, 2021, CS1 was contacted by MENA, who was using a different Mexico-based telephone number: XX-XXX-XXX-9266. CS1 was able to introduce a new CS (CS2[2]) to MENA over the phone; MENA agreed to work with CS2. Agents instructed CS2 to contact MENA to purchase eight ounces of methamphetamine for $1,200 and 100 blue M30 pills for $500. A deal location was determined; MENA stated the courier would be arriving in 15 minutes. Before going to the deal location, CS2 met with agents and CS2's person was searched for narcotics and weapons; none were found. CS2 arrived and contacted MENA, who stated his courier was in a white Dodge pickup truck. CS2 met with the courier (later identified as Isai FERNANDEZ Munoz) and completed the deal for 255.0 grams of methamphetamine and 100 blue M30 pills. After the deal, CS2 met with agents and turned over the 255.0 grams of methamphetamine and 100 blue M30 pills. The methamphetamine tested positive for methamphetamine. The pills were submitted to be tested and results are still pending. FERNANDEZ was later federally indicted in case number 4:22-cr-00005-DN-JCB, after a traffic stop on December 22, 2021, where FERNANDEZ was found to be in possession of approximately 3.8 kilograms (roughly 40,000 pills) of Fentanyl-laced fake oxycodone pills.

**November 2, 2021, Controlled Purchase**

13. On November 2, 2021, agents instructed CS2 to contact one of MENA's couriers, LOPEZ, to purchase two ounces of heroin for $1,300. LOPEZ and CS2 determined where to meet. Before going to the deal location, CS2 met with agents and CS2's person was searched for

---

[2] CS2 is being paid by agents to provide assistance to our investigation. CS2 has a criminal history but no convictions for crimes of dishonesty. As shown herein, CS2's information has proven to be reliable.

narcotics and weapons; none were found. CS2 went to the deal location and LOPEZ arrived a short time later. LOPEZ met with CS2 and sold CS2 83.9 grams of heroin. After the deal, CS2 met with agents and turned over the 83.9 grams of heroin. The heroin tested positive for heroin. Agents conducting surveillance were able to identify an apartment occupied by LOPEZ.

**November 17, 2021, Search Warrant**

14. On November 17, 2021, agents obtained a search warrant for LOPEZ's residence. During the search, agents seized 6107.9 grams of heroin, including 101.4 grams from LOPEZ's person, and $19,224.80 in U.S. Currency. The 6209.3 grams of heroin tested positive for heroin. LOPEZ was federally indicted in case 2:21-cr-00505-DBB.

**February 23, 2022, Controlled Purchase**

15. On February 23, 2022, CS1 was contacted by MENA. MENA told CS1 to now contact MENA at a new phone number, XX-XXX-XXX-8867. CS1 was able to introduce a new CS (CS3[3]) to MENA. MENA agreed to sell narcotics to CS3. Agents instructed CS3 to contact MENA to purchase two ounces of methamphetamine for $400 and 100 blue M30 pills for $600. CS3 and MENA established a deal location. A short time later, CS3 received a message from MENA stating that his courier would be arriving in 5-10 minutes. Before going to the deal location, CS3 met with agents and CS3's person was searched for narcotics and weapons; none were found. CS3 then went to the deal location. Agents were conducting surveillance on the deal location and observed a vehicle arrive. Agents observed a male (later identified as Suspect 3 (S3)) exit and meet with CS3 to sell CS3 87.9 grams of methamphetamine and 100 pills from MENA. After the deal, CS3 met with agents and turned over the 87.9 grams of methamphetamine and 100 pills. The methamphetamine tested positive for methamphetamine. The pills were submitted for testing and results are pending. Agents followed S3 from the deal location in an attempt to identify his residence and/or stash house. Agents observed S3 eventually arrive at the apartment building located at 786 North 900 West, Salt Lake City, Utah.

**March 10, 2022, Controlled Purchase**

16. On March 10, 2022, CS1 was contacted by MENA, who was using another new phone number: XX-XXX-XXX-1015. The phone number was passed along to CS3. Agents instructed CS3 to contact MENA to purchase eight ounces of methamphetamine for $1,300. CS3

---

[3] Agents have been paying CS3 to provide assistance to our investigation. CS3 has no criminal history. As shown herein, CS3's information has proven to be reliable.

was able to contact MENA at that new number, negotiate the purchase of eight ounces of methamphetamine, establish a deal location. Before going to the deal location, CS3 met with agents and CS3's person was searched for narcotics and weapons; none were found. Agents were conducting surveillance on the apartment located at 786 North 900 West #104, Salt Lake City, Utah, and observed S3 and another male (later identified as Macario SOTO-Montoya) leave the building and travel to the deal location. S3 and SOTO met with CS3 and sold CS3 263.6 grams of methamphetamine. After the deal, CS3 met with agents and turned over the 263.6 grams of methamphetamine. The methamphetamine tested positive for methamphetamine. Agents followed S3 and SOTO back to their residence and observed them enter apartment #104.

**April 1, 2022, Controlled Purchase**

17. On April 1, 2022, agents instructed CS3 to contact MENA to purchase two ounces of heroin from MENA for $1,300. CS3 contacted MENA, negotiated the purchase of two ounces of heroin, set a deal location. Before going to the deal location, CS3 met with agents and CS3's person was searched for narcotics and weapons; none were found. CS3 then traveled to the deal location. Agents were conducting surveillance on the apartment located at 786 North 900 West #104, Salt Lake City, Utah, and agents observed S3 and SOTO leave the apartment and drive to the established deal location. S3 and SOTO met with CS3 to sell CS3 80 grams of heroin. After the deal, CS3 met with agents and turned over the 80 grams of heroin. The heroin tested positive for heroin.

**MENA Traveled to Utah**

18. In March of 2022, agents obtained information from two separate sources that MENA was attempting to cross into the United States from Mexico. Agents learned, however, that MENA was initially intercepted by law enforcement near San Diego, California, and intercepted a second time near El Paso, Texas.

19. On April 20, 2022, agents learned that MENA had successfully crossed into the United States and was currently in California. MENA reached out to CS1 and CS3 and provided both of them his new phone number, XX-XXX-XXX-4828. On April 22, 2022, agents were advised by CS1 that MENA had crossed and currently was heading towards the Los Angeles area.

20. On April 24, 2022, agents learned that MENA had arrived in Utah. Agents conducted surveillance and were able to positively identify MENA during surveillance at the 786 North 900 West location –the apartment associated with S3 and SOTO.

**MENA and SOTO's Arrests**

21. On April 25, 2022, agents obtained a search warrant for a silver 2013 Chevrolet Malibu and the apartment located at 786 North 900 West #104, Salt Lake City, Utah. Agents conducted a buy/bust operation, hoping to have MENA deliver 8 ounces of heroin to the CS3. Agents directed the CS to contact MENA and set up the purchase of the 8 ounces of heroin. A deal location was established. Agents conducting surveillance at the apartment located at 786 North 900 West #104, Salt Lake City, Utah, observed MENA and SOTO exit the building and enter a silver Chevrolet Malibu. MENA was in the driver's seat; the Malibu left the complex and arrived at the deal location where agents converged on the vehicle and took SOTO and MENA into custody. Agents located 254.1 grams of heroin wrapped in a T-shirt on the center console and 64.9 grams of blue Fentanyl-laced fake oxycodone pills scattered throughout the vehicle. The 254.1 grams of heroin and the 64.9 grams of Fentanyl-laced fake oxycodone pills were seized. The heroin tested positive for heroin. The pills have been submitted for testing and results are pending.

**Search Warrant at 786 North 900 West #104**

22. Agents responded back to, and served the warrant at, the apartment located at 786 North 900 West #104, Salt Lake City, Utah. During that search, agents located a stolen Smith and Wesson 9mm M&P Shield handgun, 2100.5 grams of Fentanyl-laced fake oxycodone pills, 1019.8 grams of heroin and 31.0 grams of cocaine in the bedroom closet inside the apartment. Agents also located approximately $5,000 in U.S. currency (pending final count) in a bedroom. The heroin and cocaine were later tested and tested positive for their respective substances. The Fentanyl-laced fake oxycodone pills have been submitted for testing and results are pending.

23. Agents interviewed MENA. Post-*Miranda*, MENA admitted to coordinating narcotics transactions with several individuals. MENA admitted that he was on his way to deliver eight ounces of heroin to a customer at the time of his arrest with SOTO. MENA stated that the drugs were in the apartment occupied by SOTO when MENA arrived in Utah. MENA stated SOTO was residing in that particular room where the drugs and gun were located. MENA stated SOTO was his equal in the organization's hierarchy; MENA claimed both he and SOTO

would have been working together. MENA said SOTO facilitated getting MENA to the apartment and SOTO picked up MENA in SOTO's vehicle.

24. Agents interviewed SOTO. Post-*Miranda*, SOTO denied his involvement in the event leading up to his arrest. SOTO also denied any knowledge of the drugs that were seized from the vehicle. SOTO claimed to be merely a passenger in the car. SOTO claimed to be staying at the apartment and sleeping in the living room. SOTO claimed that his friend Alejandro (RODAS) had stayed in the room where the drugs and gun were found, but that RODAS left once MENA arrived. SOTO said RODAS left all the drugs in the bedroom. SOTO claimed to have legitimate employment hanging sheetrock. SOTO was asked whether SOTO's fingerprints would be found on the gun and drugs in the apartment. SOTO admitted his prints would be on both. SOTO stated he was merely looking at the gun and drugs. SOTO denied knowing drugs were in the packages in the vehicle. SOTO claimed to not know MENA's name or phone number and denied having a cell phone (though a cell phone was seized from his person at the time of arrest).

**Elements of the Offenses**

25. At the request of magistrate judges in the District of Utah, I have included the following elements for the counts alleged herein:

**Distribution of a Controlled Substance**

a. *First*, the defendant knowingly or intentionally distributed a controlled substance as charged; and
b. *Second*, the substance was in fact Heroin [or Methamphetamine, or Fentanyl].

**Possession of Controlled Substance with Intent to Distribute**

a. *First*, the defendant knowingly or intentionally possessed a controlled substance as charged;
b. *Second*, the substance was in fact Heroin [or Methamphetamine, or Fentanyl]; and
c. *Third*, the defendant possessed the controlled substance with the intent to distribute it to another.

**Possession of a Firearm in Furtherance of a Drug Trafficking Crime**

a. *First*, the defendant knowingly possessed a firearm,
b. *Second*, in furtherance of a drug trafficking crime.

26. I swear that this information is true and correct to the best of my knowledge, information, and belief.

Based on the foregoing information, I respectfully request that a warrant of arrest be issued for JORGE MENA-PANDURO, and MACARIO SOTO-MONTOYA, for violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c).

*/s/ Johnny Ngo*
Affiant, Johnny Ngo, Task Force Officer
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1.
SUBSCRIBED and SWORN to before me this 27th day of April, 2022.

HON. DUSTIN B. PEAD
United States Magistrate Judge

United States District Court
District of Utah

APPROVED:

ANDREA T. MARTINEZ
United States Attorney

*/s/ Seth Nielsen*
SETH NIELSEN
Special Assistant United States Attorney